All rise. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. Please be seated. This is a big courtroom. You all seem so far away. Judge Newsom, we appreciate you having us here in Birmingham. Well, I'm just so excited to have you and Judge Rosenbaum here, and I just want to take a moment, if I may, to welcome both Judges Martin and Rosenbaum to this court. I'm so proud of my city, and so I'm proud to show you the city and the bar, and I'm so proud of you, and so I'm proud to show you off to the bar. And so I'm just glad that we were able to make this work, and I appreciate your flexibility, both of you, in traveling here for the argument. Delighted to do it. Thank you for your hospitality. Yes, we've had a wonderful time. These Catholic cases are complicated to schedule. When I was a district court judge, we could all be on the phone together trying to schedule these things, and it just doesn't work that way in the Court of Appeals, so we realize there's been some cooperation on the part of the parties, and we're very appreciative about that. With that, I am ready to call the case. You all ready? Ready. Kelvin Spencer and others versus Specialty Foundry Products and others. So, Mr. Capple, good morning. Thank you, Your Honor. Good morning. May it please the Court, my name is Brian Capple. I represent Emerus Minerals USA, LLC, one of the defendants who have appealed the district court's order remanding this case to state court. These defendant's appellants, each of which supplied different products used for different purposes in different manufacturing processes, by different employees of the now-closed Grady Foundry here in Bessemer, Alabama, have been sued by 229 plaintiffs, all former employees of that foundry, on allegations of negligent design and manufacture, failure to warn, violations of the Alabama Extended Manufacturer's Liability Doctrine, conspiracy and fraudulent suppression, misrepresentation and deceit. Plaintiffs generally argue that defendants' products were defective because they contained carcinogenic chemicals and other toxic ingredients that harmed the plaintiffs over at least a 17-year period. Plants were initially exposed to them and then re-exposed, quote, separately and repetitively. Can I ask you a question? I certainly understand where you're going with sort of the procedural ramp-up. It's in your interest to suggest to us that the plaintiff's claims are disparate and sort of hard to kind of get your hands around. But before we get there, and we will, but before we get there, can we talk a little bit about the burden of proof? Certainly. The parties don't brief it extensively. Your position is that this event or occurrence language is de facto an exception so that the plaintiffs have the burden. I guess my question is, isn't it really an exclusion? It's a little bit more fundamental than an ordinary exception, right? It's not something that sort of takes the mass action definition as it exists and then plucks something out of it. The event or occurrence language actually definitionally changes whether it is a mass action. And does that change in any way, shape, form, or fashion the burden? It is your burden to show that this is a mass action, right? You don't deny that. No. And so doesn't the event or occurrence language say this isn't a mass action? And so why isn't it your burden? So, Your Honor, in answering that question, it's best to look back at all of CAFA 1332d. The way CAFA is structured begins with 1332d-1, which is the definition of class action. 1332d-2 provides subject matter jurisdiction in federal courts for class actions. Subsequently, 1332d-3 through d-10 are what we call CAFA exceptions. They best, in certain circumstances, district courts of jurisdiction over class actions. 1332d-11, which is what you're talking about, starts in the exact same way as d-1, d-2, and then the exceptions. 1332d-1 – sorry, d-11a states that mass actions are class actions, and then you get into the exact same setup, d-11, b-1, and b-2. d-11b-1 says mass actions are cases in which more than 100 plaintiffs suppose their claims to be tried jointly, and then that they all have to meet the $75,000 amount of controversy requirement. d-11b-2, which is what we're talking about here, is the exception to that. If you satisfy d-11b-1, which we have in our notice of removal, we provide information indicating that those factors have been met. Once you satisfy that action, you are properly in district court unless an exception applies, just like it would apply under d-3, d-4, d-5 to what amounts to a class action. That's the way district courts like Cooper have addressed the issue. It's also consistent with the legislative history, which calls this particular event or occurrence exception to a CAFA jurisdiction. At least four times in the legislative history describing what this is intended to be, the Senate report mentions this as an exception to the mass action definition, not an exclusion, and indicates that it's to be applied strictly. And so if it were simply an exclusion, you wouldn't apply it strictly. It would be simply a matter of the definition. This is an exception, which the courts are supposed to apply strictly. Therefore, like d-3, which under Edmonds is Plans' burden to show an exclusion to CAFA jurisdiction, this is also an exception that Plans has the burden of showing that this is an event or occurrence. Yeah, it certainly walks and talks and quacks or whatever like an exception. I just wonder if there's some difference, and I don't want you to feel like you get hung up on this. I wonder if there's some difference between an exception and a definitional exclusion where this one says the term mass action shall not include. So it's almost like it precedes an analysis of true exceptions. Certainly, and so I think the difference there again is that when Congress enacted this particular section, d-11b, it started with what constitutes a mass action, and then it accepted four categories, not just one. We're dealing with one exception here, but it accepted four categories of cases from that. Not all of them are significant definitional exclusions. They're exceptions to what constitutes a mass action, just like a case that constitutes a local controversy, which is d-4, would be an exception to CAFA jurisdiction. In that regard, suppose we were to remand this case or reverse the decision to remand the case. It's hard to keep all the procedures straight. But anyway, if you were to win, what would prevent the plaintiffs from claiming the local controversy exception, which is not before us today? At this point, Your Honor, the party that would be able to raise the local controversy exception would be the court. The plaintiff has raised that issue. Briefed it before the district court. It's not decided. The district court wants to raise it again. That is the district court's prerogative. I'll say that we've put information into our briefs about why that exception would not apply. They're all very good, strong arguments. I can go through them today for you now if you prefer. But I think there's a reason why the district court didn't address that issue in its order. It's because that exception does not apply as well. Getting back to Judge Newsom's question, it does seem, if we don't go to the legislative history, if we're just looking at the structure of the statute itself, and if we're just looking at the language, it does seem like this is an exclusion. I mean, what would be the reason why it would be set out in a different way than the exceptions? Well, Your Honor, I think it actually is set up the exact same way the exceptions are set out as to a class action. So again, if you look back at the overall structure of 1332D, you have a definition of a class action, and then subsequently right below that, the many exclusions. Here again, you have a definition of a mass action, and then the cases that would not satisfy that definition or otherwise be accepted from that definition are set out in four exceptions below. It's the same structure. But I guess my question for you is, is there any reason why it could not have been put under the exceptions to the class action? Well, those 1332D11B2, and that's B2, 2I, 1, 2, 3, and 4, only apply to the definition of a mass action or a mass action that's in 1332DA and DB1. So it couldn't fit into a different, say, paragraph under D, like D13 or so. It just wouldn't apply because it has to stay under that same structure. But if you step back again and look at it overall, it's the same structure as how the exceptions apply to definitions of a class action starting at D2. So the reason why the burden is at all relevant here is that the district court below understood that the legislative history called this an exception, said the burden doesn't matter. But I think the burden does matter because it deals with who has to show, who has to meet the preponderance of the evidence, that this is one event or occurrence or many events or occurrences. I'm sorry to just get back one more time, but I understand your position is that it is an exception to the mass action. But my question for you is, why couldn't an event or occurrence have been an exception to the class action? You know what I'm saying? There's a slightly different version of it in the local controversy exception. Except that you would agree that they don't cover exactly the same thing, right? I would agree, Your Honor. Okay, so why couldn't it have been put under the class action? I don't know if it could or couldn't have. It is intended to address, again, the idea that a mass action should be heard in federal court. Except those class actions that are truly local in nature. And that comes from legislative history. Truly local in nature, truly local single event with no substantial interstate effects. That would be an okay mass action to bring to state court. It would not go to federal court. That particular concern that Congress had doesn't necessarily apply to a class action. It would only apply to the mass action with 100 plaintiffs, common questions of law and fact, to be tried jointly. Okay. No, no, that's okay. I don't want to use up all your time. Just one last question on it. I guess my question is more fundamental. Why do you think it could not apply to a class action if it had been put under that section? It wouldn't apply to a class action. I think Congress's intent is different. So Congress was looking to bring... But we have to look at the legislative history to know that, right? Well, I think you can discern that from the text. But you can also look at legislative history to find that, Your Honor. Yes. So, again, what we're looking at here is the antevent or occurrence exception to what accounts as a mass action or a CAFA. And that's an issue of first impression in this court. And, of course, the court's legal review is de novo. The plaintiffs contend—make two arguments why this exception should not apply. The first is that the statutory text, they claim the statutory text, which refers to antevent or exception, does not mean a single event or a single occurrence. Can I ask you just a question about that? So certainly in the blue brief, you seem pretty wedded to this theory that a single event is like a particular moment in time. But doesn't the word—I mean, you're sort of importing the word single into the text. And I get it that it says antevent or occurrence. But doesn't that really just sort of beg the larger question of like what is an event or an occurrence? I mean an event or an occurrence isn't necessarily just a single moment in time, is it? I mean a football game is an event, right? Notwithstanding the fact that you have multiple players and plays and collisions and potentially injuries that result from different sort of circumstances, right? But that's still an event. Sure, but a football game would be a single event. All right, and what we're looking at here is the equivalent of multiple football games over an entire season. I guess all I'm suggesting is that importing the word single into the statutory text doesn't really answer the question. It just asks the question. Right, and that's the next point we're going to get to, Your Honors, is once we get past the idea that there must be a single event or occurrence, the question then becomes what constitutes a single event or occurrence? And what we have when we look at that is a number of different conceptions of that. And I would like the Court's indulgence to take you briefly through one particular case that deals with three different conceptions of what constitutes a single event or occurrence. Largely from the 2016 decision by Judge Paul Huck in Arrington v. Anaheim P. Hall, which decided for you no briefs. In that decision, Judge Huck synthesized the law from 2005 all the way through 2016. He came up with three different conceptions of what constitutes a single event or occurrence. The first comes from Adams v. Macon County-Greyhound Park, and that's a decision by Judge Keith Watkins from the Middle District of Alabama. He read the exception similarly to what the Ninth Circuit has said in Allen v. Boeing Company and Nevada v. Bank of America. As far as he believed, the statutory text required, quote, a single discrete incident and not merely similar instances taking place at the same location for which the same defendants are responsible. So we have one conception, a single discrete event. I think it's fair to say the plaintiffs agreed that they cannot meet that standard. The second conception comes from the Rainbow Gun Club decision, which I think is front and center in all of our briefs, which Judge Huck explained was a slightly broader understanding of event or occurrence and suggested that it could be satisfied by a pattern of conduct in which the pattern is consistent in leading to a single focused event that culminates in the basis of liability. So, in other words, as Judge Jalik stated, in the Rainbow Gun Club, there can be multiple acts leading up to one inflection point after which liability is established. So, again, you're looking into one particular point in time in the Rainbow Gun Club. But you agree that, I mean, just based on everything we know about this statute, this exception that the plaintiffs are trying to travel under would apply in the case of a toxic spill. You agree with that? That's correct, Your Honor. And, I mean, sometimes we know that those can go on a little while before they get discovered, but that doesn't change your view on that. It still would fall into this exception, right? That's correct, and a toxic spill is a great example. There may be multiple acts of negligence or alleged negligence leading up to the moment when toxins spill out of, say, a plant, a pipe, an oil well. But it only becomes an event of occurrence when the well fails, as in Rainbow Gun Club, the pipe breaks, and that's the moment in which liability attaches to the conduct. So rather than dying on the hill of the Ninth Circuit's very narrow kind of hidebound interpretation, why don't you just embrace the Fifth Circuit's interpretation and say, but the facts here don't meet it? And we have, Your Honor, if you reply brief, that's front and center. That's our argument. We think that the Ninth Circuit and Judge Watkins and those from Alabama's decision are consistent with statutory text, but the middle ground opinion is the Rainbow Gun Club, which still requires a single focused event that culminates in the basis of all liability, and that's found nowhere in this complaint or in this record. In fact, there's multiple instances of different acts, different products, different combinations of products over a 17-year period that wouldn't constitute one single focused event. You can't, plaintiffs can't say that all their claims are derived from one piece of conduct or one combination of products, or one defendant's actions that happened at one point in time after which liability attached. So I see my time is up. If there are any further questions, I'd be happy to answer them. Well, we'll hear from you on rebuttal then. Yes, Your Honor.  Good morning. May it please the Court. Mr. Capel. My name is Robert Prince. I represent the, I believe, in this case. And the District Court's order should be affirmed by this Court because of the Ninth Circuit, because of, I'm sorry, because of the Third Circuit's decision in Abraham. I ask that you not only use the analysis in Abraham as a guide, but you actually accept their definition of what an event or an occurrence is. Can we start with the burden of proof? I don't mind at all. I will say this, that to me it's, you know, I'm going to reveal my simple mind. I think a person must first look at what the purpose of the act was, and it's all about class actions. It is all about interstate class actions. It's almost like as a matter of afterthought, somebody said, well, wait a minute, some of these mass torts, or mass actions rather, are disguised and they're abusive also. So the Court, I mean, the Congress said, well, let's take it up. They then, as you know from looking at 11D, Section 11 subpart, they say, well, you know, if you've got the requisite number of people and you want to go to trial together with a common question of law or fact, you are a class action. All right? So there's the difference. Now, once they did that, they exempted, and that's the critical word, they exempted cases like ours, I argue, from being a class action. So I don't get into being a class action to have to find an exception. So your point is that there is a difference between an exclusion, or an exemption as you call it, and an exception. The exclusion sort of runs to the definition of mass action in the first instance. An exception is something that sort of like happens later. Once mass actionness has been determined. Yes, Your Honor. In fact, as you know, Section 2 expands original jurisdiction in federal court for what? Class actions. And it most certainly expanded it, no question about it. But a mass tort like ours, definitionally, is very difficult to stretch that into a class action. We couldn't get certified as a class if we had to. So let me ask you this. When I was preparing for the argument, I thought that maybe there's an analogy to the structure of the law in hearsay. Hearsay has both exclusions and exceptions, right? This is not a quiz, but so in Rule 803 and 804, we have exceptions to hearsay, right? Somebody says hearsay, and the proponent says, no, no, no, it fits within an exception. And then 801D has exclusions, right? These things, statement of a party opponent, definitionally is not hearsay. So there is this difference between exclusions and exceptions. However, my understanding anyway is that we as a court, and I think courts across the country, have treated exclusions and exceptions the same way with respect to the burden of proof. The proffering party has the burden of proof under both. Which makes me wonder whether there is this chasm of difference between an exclusion and an exception. I think there is a distinction, and I think it's a real distinction. And I noticed that there was a recent case that came out of Colorado District Court case where that judge said he recognized the split of authority. But he also held that that burden never shifted from the party that's seeking jurisdiction. And I think that's the critical difference. They are seeking federal jurisdiction of our cases. The burden, in my judgment, should never leave them. What about, what do we make of the fact that the legislative history does routinely refer to this as an exception? That is a problem, I readily admit it. I think a lot of commentators and judges across the nation have, but not all of them. Some of them have clearly marked the distinction between the two, but I think that's a, I think nomenclature is a problem. Well, should we be looking at the legislative history here? I think you should. I do. And especially if you look at the structure of it, and I think, I know it will confirm what I'm saying about this being almost like an afterthought. I mean, the first ten sections are all about class action this, class action that. And we couldn't fit into some of those if we had to. You know, some of the problems, if you look at the abuses that was going on. I mean, I know this court, the background of your honor, practicing lawyers on the Supreme Court. I mean, these cases cost, they are expensive for us to prosecute. I mean, this is the last kind of case that would be abusive where somebody would get a coupon in Colorado and I would get a million dollars. I mean, we have to prove every one of these cases. I think, and they mentioned the Carr decision. My classmate, Ava Johnson, Judge Johnson pointed out, she said, these people weren't filed as a class action, they didn't get certified as a class action. They all could be independent cases, and they have each one of the injuries has to be proven independently. And she's right. Mr. Prince, to follow up on that, so do the injuries of your clients depend on what job they were performing? No, your honor. As I understand it, and of course, we're early in the case, it's been stated and removed. But as I understand it, and I am certainly not the lawyer that's been handling most of that. But our theory and the complaint, if you just go with the claim, it says all plaintiffs were injured by all defendants, regardless of where they were. Now, I know the appellate's trying to make a deal about that. But no, these products were brought in there, and we allege at this point that they all are toxins, they all are carcinogenic, and they have injured every plaintiff. I don't think it makes a difference. Now, in all candor, I have to acknowledge that we submitted an affidavit in this case, trying to defeat the local controversy exception. That's what we were fighting over at that time. Was there a significant defendant? Were these people citizens of Alabama? And we submitted an affidavit that says, one of the lawyers in the case did, based on his interview of the plaintiffs, and they're presenting him with their work records of the length of time they worked, that 70%, I'm rounding that figure off, 70% were exposed to the significant defendant, the one that we were saying, the specialty products. So, of course, the appellate said, well, that means 30% of you were not exposed to those. But that's a close reading of that affidavit does not lead to that conclusion. He only said that he could confirm that 70% of the people were around that product. That's all. So, you know, our position is at this point, as the complaint states, all defendants combined, concurred, they all produced a product, either sold it or it released an agent that injured us. So I sense that we're sort of transitioning to the merits, which is fine. I have one last burden of proof question, though. Especially, I mean, even in the explanation that you just gave, it seems like the knowledge of the event or occurrence-ness, if you will, is more peculiarly within your sort of head than it will be the defendant's. And so I wonder about sort of the fairness and efficiency of placing the burden on them. Typically, it'll be defendants seeking to remove. Typically, it'll be, as here, it'll be a plaintiff seeking remand. Is it fair or efficient to place the burden on the party that will know much less about the operation of the exception-slash-exclusion? I'm sure the appellants would say that it is, but, Your Honor, I do not think it is. Well, I think they would probably say that it's not fair to put it on them, right? They would say it's fair to put it on you because you know. Oh, they're definitely saying that. The reason I say that they maintain that burden of proof is because, as you know, only the record at the moment that they file that notice removing my case, they remove a case, what is in the record that goes up to the district court, from the state court? Here, there was only a complaint. I mean, there was nothing else of any significance. So they limited to the complaint. So if, based on that complaint, they can make a legitimate argument that there's no event or occurrence here, then they should carry the date. And also, as you know, the district court can order limited discovery on jurisdiction questions. So in response to Judge Martin, I mean, isn't the hill that you have to climb comes from the fact, I guess, that you've got, you've sued multiple defendants, right, on multiple theories, design, manufacturing, labeling, numerous different products. Difficult to tell from the complaint whether the products themselves were the harmful substance or combined to form a harmful substance. You've got people working in different parts of the factory over the course of two decades. So I think their position, and I'm just interested to hear your reaction, is that that's just too kind of sprawling to be an event or occurrence. No doubt about it, Your Honor. One of the reasons is that we drafted this for state court. And as you know, being an Alabama lawyer, there is a big difference between our notice pleading standard in state court and the plausibility standard of federal court. I mean, this complaint, actually for a state court complaint, it's very thorough. 29 pages, I think like 20 of them are meaty. And we tried to allege different ways. And as you know, you can do alternative theories that overlap. And that's what we were trying to do. But one of the things that we did was we did not use the word event or occurrence. I mean, that is a conclusion after looking at the complaint. But what we did do is inescapable in my judgment. If you read the complaint, if a person reads it, and you look at the allocations against the defendants, it comes to the well-breaking is the exposure. I mean, we're injured from the exposure. And there are a lot of negligent acts that lead up to it. But we were exposed, and the pipe broke, and the land flooded. I mean, we were exposed. That's all in there. So while we didn't use the words, we certainly pled enough facts to survive. But I guess, right, I mean, the well ruptured, the land flooded, those are sort of like culminating events, right? I mean, do you have a single culminating event here, or is it just over the course of 20 years, there were chemicals that passed through the foundry that either on their own or in combination formed hazardous substances that harmed different people? That's exactly right. And like one of the commentators, one of the courts said in discussing this, I believe it might have been in Fifth Circuit, Rainbow decision, it's difficult to tell at what point the pipe breaks, the well didn't produce. It's difficult to say when the toxins caused the irritation. When did you get sick? When did it manifest? But it seems like one of the differences between this case and the Fifth Circuit case is you all are not suing the employer here for obvious reasons. But there was a single defendant in the Rainbow gun case. And one of the problems, I think, is that you've got 10 different defendants all coming in and out at different points in time and all having different kinds of products and things of that nature, which it seems to me to make the analysis different than if you're talking about one defendant in particular. It does on the surface appear that it would, but however, our pleadings don't go back 17 years as appellate claims. Now, that may be a fact that they opened that during the year 2000, but our complaint is limited to the two years prior to our filing it. We clearly state that in one of the paragraphs. So you've got a finite amount of time where we know what defendants were in there and what products were in there. There may have been some changes earlier, but during that two-year window, we know who's there. We spent a good amount of time trying to figure that out before we filed this. So I feel pretty comfortable that once we come down to the proof, all defendants' products will be in there during that time frame. I'm sorry, but how does it make it one event or occurrence? If you've got ten different... I mean, you just are sort of picking... I'm sure it's not random, but you know what I mean. In some ways, it has a random aspect to it. You're just picking two years out of a continuous period of time. How does it make it an event or occurrence when you're picking these particular two years? You could pick some other two years or whatever. Right. Of course, we chose those for statute of limitations problems on proving our damages. But the fact that there are multiple defendants, again, in my opinion, should not enter into this because we also pledge combined and concurring negligence, which is a recognized Alabama principle of law where you have two defendants, and if they both injure you through exposure, then they both can be held liable for the entire judgment. Whether that's fair or not, that's the law in Alabama. So I'm not bothered personally that there are multiple parties because each one is individually liable based on our proof, but they also could combine and concur. Now, let's take isolate one. If one party... We would show their negligent acts, whatever it was, or their wanton acts. Those acts led to an exposure. That's our event or occurrence, is exposure. That's it. And so if you work backwards, but for those people doing that, that defendant doing that, blah, blah, blah, those are the acts of negligence that the Fifth Circuit found in Rainbow. Those negligent acts were entirely different. I mean, some of them overlapped about the cement, but some did not overlap. They were independent acts of negligence, and the court said, well, look, if they've got some commonality, which is what we have in ours, then that series of acts can lead up to one event in the pipe, the well not producing, and in our case, it's the injury from the exposure. I mean, as I started this conversation off, it's tough to take a mass tort and then apply it in a class action case. I mean, it just is. Class actions have a representative. Here we have all the plaintiffs huddled in conceivably in the courtroom. We usually try a limited number to start with, but they could all be there. You don't have any of that in a class action. You don't have the proof requirements individually that you have. It's just difficult to analogize between the two. But even so, I think Rainbow is right on point. We are not asking this court to adopt Rainbow. We want you to look at the Abraham case because we think that's much more on point. But there, too, right, to Judge Rosenbaum's point, in Abraham, the defendant was the foundry owner, right, the factory owner? He was, but I'm not sure that that's a distinction, maybe without a difference because it's not an employment case and there are certain laws, as Your Honor knows, that would come into play there. But I think the facts, whether there's an event or occurrence, I wouldn't think would matter who the defendant was and what the negligence or what the acts were. Well, I mean, I think, at least for my purposes, that the difference is that there you do have, like, some sort of culminating event that you can sort of get your hands around, whereas here, I mean, it seems like if you want to plead event or occurrence involving multiple, especially designing, manufacturing, or labeling defendants, then you would have to show that, you know, sort of the product all entered the factory and combined to form some homogenous substance that then injured the plaintiffs in a particular locale at a particular time. That feels more like the well failing to me. Could have. They could have combined. They're independent acts of a lot of issues, negligence, but they could have combined and concurred to do it. But I think this was from one of the circuit decisions, the Court of Appeals, and they were looking at Abraham and discussing it and they said the act, the failure to abate was the act in Abraham. The failure to abate was the event. The failure of the factory owner to abate, correct? Yeah. So in our instance, it would be your failure to abate these exposures. You know, you had lots of opportunities and you never did it. But, yeah, I guess I don't mean to, like, hang all of your time, but, I mean, I guess it's like as to Defendant 1, your failure to abate your products, Defendant 2, your failure to abate your products, Defendant 3, your failure to abate your products, and some of those products themselves might have caused injuries. Some of them might have mixed in with Defendant 5's products and caused injuries. It just begins to unravel a little bit. It will no doubt unravel, probably, if it does put into proof. But at the pleading stage, which is where we are, I mean, as we pled, I think sufficiently. You know, one of the things I wanted to point out was I don't know, of course I don't know how concerned this panel is with the singular, finite moment in time vis-a-vis the event over a series of acts, over a series of time periods, which we have here, but I just wanted to offer some common sense explanation or argument for you. First of all, the words an event or occurrence, I know a lot of commentators latch on to the word and as a singular, but if you said forward to the definition of a class action, I mean a mass action that goes up and becomes a class action, it has to have a common question of law of fact. That's the requirement. Try it together, common question, and the plaintiffs have to be a certain length. If you pluralize, pluralize, if you take words and out of there, you omit it and you say events or occurrences, it destroys the common question of law of fact. So that is a common sense reason why they didn't do it. Look, the framers of this, the drafters of this, Congress, it was over a period, as you know, of years. They had ample opportunity. One of the proposals was to take the words a single, sudden accident. Sudden, I stress that word. They said no. They said no. I mean, it's like, well, of course they had to say no, because if they do make it plural, stretch it out at all, you're going to lose the very definition of a mass tort or a mass action becoming a class action. See, my time is up. Thank you, Your Honor. Thank you, Mr. Prince. So, Your Honors, I'm going to address three different particular issues that were just discussed. But let me first begin by acknowledging what Judge Rosenbaum said, that this case seems to be more sprawling than a regular case. I think what you'll find when you look at all the cases, citing this exception to capital jurisdiction, is that the ones that are successful in proving an event or occurrence, those are the rifle shots, two words, one defendant, one entity, usually an employer or a refinery, alleging one specific course of conduct. Not multiple defendants. In this case, nine defendants. There were ten. Now nine. Alleging multiple different product sales, different fares of labeling, different fares to meet OSHA requirements, conceit, conspiracy, and other acts that are all disparate. I think the better analog, if you look at this case, is to a recent decision from the District of Louisiana in Addison versus Louisiana Regional Landfill Company. That case also cited Rainbow Gun Club and also cited Abraham, the case that the plaintiffs asked you to follow, and considered those two in connection with seven consolidated actions, again with multiple defendants. I think that case was around six or seven. The landfill in that case, like the products in this case, allegedly emitted harmful odors and toxic chemicals and caused the plaintiff's physical injury and mental iniquity, just like in our case. The conclusion of the Addison court deciding that the event occurrence exception did not apply is particularly apt here. Quote, the court finds the emissions of odors and chemicals from various sources, which we have, caused by various failures on the parts of various defendants, which the plaintiffs have alleged, at different times over a period of years does not constitute a single focused event such as it occurs in a chemical spill. As a result, a finding that the plaintiffs do not allege a single event is consistent with congressional intent. I think that's a pretty good encapsulation of defendant's position in this case. Various defendants, various alleged failures over a long period of time. Let me go back briefly and talk about the plaintiff's invocation of Abraham, which I think is interesting. Can I ask you one quick question that I just hadn't thought about, frankly, when I walked into the courtroom? What about Mr. Prince's point that, you know, this was a complaint filed in state court, sort of the rules are different, and now we're sort of nitpicking this thing now that we're sort of in, temporarily, in federal court. Is that fair? Well, Your Honor, we're not necessarily nitpicking the pleading standards. This is not a motion to dismiss, say, based on Nick Fowler Twombly. What we're looking at here are factual allegations actually contained in the complaint, and whether it's a state court complaint or a federal court complaint, we'd be dealing with them exactly the same way. You mentioned before about the burden, and is it more appropriate to place the burdens on the plaintiff because they're the ones that actually have the information here? I'll go slightly out of order, but just to say that defendants believe that this is the plaintiff's burden for the same reasons that you suggested, but even if it's not the plaintiff's burden, we've gone into the record, pointed to allegations in the complaint, specifically allegations that all this conduct was done separately and repetitively. We've gone into the evidentiary submissions that plaintiffs filed along with their motion to remand and pulled that information that indicates different product combinations were used at different times. And I can go back to that shortly again. And we've used that to show that even if it is our burden, we've met that burden here. There are multiple events, multiple occurrences. You know, I just had a question about the record. I'm not to, before today, go back and look at the briefs that were filed in front of Judge Heiglo, but I hadn't done it. She's, in my view, a very respected district judge, does a really good job, but she didn't spend any time really in her order analyzing what is an event or an occurrence. Was that just not the object of your briefing, or what happened there? It was, Your Honor, but I think what Judge Heiglo did is looked at a particular case that was decided in the Duggan District of Alabama that she saw as binding precedent, but certainly persuasive precedent. As district courts do, they look for precedent. And she followed that analysis, which, that analysis from 2005, capitalizes infancy, and it did not look at this particular language. So she didn't deal with an event or occurrence, but the briefs before her did. They covered actually that quite extensively. So plaintiffs tell you here that they would like you to follow Abraham, and for good reasons. Abraham is the broadest applications exception that we can find on the record. But even the court in Abraham said that the result would have been different if they had on the record before them evidence that something had changed over the course of, I think, the 11 or so years at issue in Abraham. There they had red mud at a refinery site. If the defendant had disturbed that mud, added new chemicals, pulled chemicals out, then it would have been a different result, and that's what Judge Hook mentioned in Arrington. What we showed you before is that there are at least multiple events and occurrences here because in 2000, a new defendant was added to the mix. In 2008, the defendant... Because your time has expired, so if you can wind it up. In 2008, another defendant, Southern Precision Sands, left the mix. These products were changing. This is the case that Abraham suggested would fall outside the exception. So thank you very much. My time is up. I appreciate your time. Thank you. The argument was very helpful. We appreciate counsel helping us with this case. Thanks to you, Judge Newsom, for hosting us. Thanks to Birmingham. We're going to try to find a way to come back again. So you all have a good day, and court is adjourned.